IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL G. SMITH and<br>KATHREN SMITH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 10-cv-1641 |
| | ) | |
| THE CITY OF IRON MOUNTAIN<br>LAKE, MISSOURI, | ) | JURY TRIAL DEMANDED |
| | ) | |
| and | ) | |
| | ) | |
| MICHAEL KEMP, in his individual and<br>official capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JODY NICCUM, in his individual and<br>official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## PARTIES AND JURISDICTION

1.     At all times relevant herein, Plaintiff Paul G. Smith (hereinafter "P. Smith") was a

citizen and resident of St. Francois County, State of Missouri, within the Eastern Division of the

Eastern District of Missouri.  He currently resides in Wasilla, Alaska.

2.     Plaintiff Kathren Smith (hereinafter "K. Smith"), is the wife of P. Smith.  At all

times relevant herein, she was a citizen and resident of St. Francois County, State of Missouri,

within the Eastern Division of the Eastern District of Missouri.  She currently resides in

Wasilla, Alaska.

3.     The City of Iron Mountain Lake, Missouri (hereinafter "City") is in St. Francois

County, Missouri in the Eastern Division of the Eastern District of Missouri.  It is a municipal corporation organized and existing under the laws of the State of Missouri and more specifically a fourth class city.

4.     At all times relevant herein, Michael Kemp (hereinafter "Kemp") was the Chief of the Iron Mountain Lake Police Department (hereinafter "Department").  Kemp had final policymaking authority for the Department or participated in promulgating the policy of the Department and was responsible for the implementation of such policy in whole or in part.  At all times relevant herein, he was acting in his capacity as an agent, servant and/or employee of the Department and the City and was acting under color of law and pursuant to either official policy or the custom and practice of the Department and/or the City.  He is sued in his official and individual capacities.

5.     At all times relevant herein, Jody Niccum (hereinafter "Niccum") was the Mayor of the City.  Additionally, at all times relevant herein, he was acting in his capacity as an agent, official, and/or servant of the City and was acting under color of law and pursuant to either official policy or the custom and practice of the City.  He is sued in his official and individual capacities.

6.     At all times relevant herein, Defendants Kemp and Niccum acted under color of the laws, statutes, ordinances, and regulations of the United States, the State of Missouri, and the City.

7.     At all times relevant herein Defendants Kemp and Niccum acted under the regulations, policies, customs, practices and usages of the Department and/or City pursuant to their authority as either a law enforcement officer and/or City official.

8.     The acts alleged herein occurred in the City of Iron Mountain Lake, St. Francois

County, Missouri, within the Eastern Division of the Eastern District of Missouri.

9.     This action is brought pursuant to 42 U.S.C. Sections 1983 and 1988 and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.  Plaintiffs further invoke the supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367.

10.     Plaintiffs demand a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## FACTS COMMON TO ALL COUNTS

11.     On or about September 3, 2008, at approximately 9:00 a.m., Plaintiff K. Smith became involved in a verbal argument with her neighbors, Steven and Jacqueline Maciak, at K. Smith's residence located at 678 Jackson Street in Bismarck, Missouri regarding the Smiths' dogs.

12.     Upon information and belief, Steven and Jacqueline Maciak were personal friends of Kemp and Niccum.  Additionally upon information and belief, both Kemp and Niccum had visited the Maciaks' home on multiple occasions prior to September 3, 2008.

13.     Hours later on September 3, 2008 (at or about 3:30 p.m.), Kemp, arrived at K. Smith's residence for the stated purpose of investigating a complaint of shots fired at the Maciak home.  Upon information and belief the police had been called at 9:00 a.m. that morning, but Kemp did not investigate until 3:30 p.m.

14.     P. Smith and the Smith children were at K. Smith's residence when Kemp arrived.

15.     During the investigation regarding the supposed shooting on September 3, 2008, P. Smith denied shooting at his neighbor's house.

16.     On September 3, 2008, P. Smith was on probation.  Kemp called the probation

office and insisted that it remove the Smith children from the home, and he further insisted that

P. Smith be tested for alcohol and drugs that same day.

17.     Kemp placed P. Smith in handcuffs and questioned him about the shots fired

earlier that day.

18.     Additionally, Kemp placed the Smith children in the back of his police car and

said in front of them that they would be living somewhere else because their father was "a piece

of s--t."  The Smith children were traumatized by this event.

19.     Kemp later released P. Smith and the Smith children from his police car but told

P. Smith that he had to go to probation and parole that evening at 6:00 p.m. for drug testing and

also had to report to probation and parole the next day.

20.     On the next day, September 4, 2008, P. Smith reported to the probation office in

Farmington, Missouri with his five year old daughter, Samantha Smith (hereinafter "Samantha").

21.     At the Probation Office on September 4, 2008, Defendants, through Kemp,

arrested P. Smith for Unlawful Use of a Weapon, despite the fact that no witness had observed P.

Smith even in possession of a weapon.

22.     P. Smith was also falsely charged with disturbing the peace by language and

verbal assault for an incident or incidents that were alleged to have occurred on September 3,

2008 at 6:00 p.m. at K. Smith's Jackson Street home, even though he was not at the home at that

time.  These citations are attached hereto and incorporated by reference herein as Exhibit 1.

23.     When P. Smith learned that he was going to be arrested by Defendants, he called

K. Smith at work to come to the probation office to pick up Samantha because efforts were being

made to remove Samantha from his custody.

24.     When K. Smith arrived at the probation office, she witnessed Kemp and an

4

unknown female (whom she later learned was Kemp's wife) struggling with Samantha, who was resisting being placed in a car by them.  These events further traumatized Samantha.

25.     K. Smith identified herself and was told that she was under arrest for disturbing the peace by language for an incident that occurred on September 3, 2008 at 6:00 p.m. at her Jackson Street home.  K. Smith was not even at her Jackson Street home on September 3 at 6:00 p.m.

26.     As part of the Defendants' arrest of K. Smith, the woman who refused to identify herself at the time, but who was later identified as Kemp's wife, attempted to conduct a search of K. Smith's person.  Kemp's wife was not and is not a police officer.  In the course of her search of K. Smith, Kemp's wife placed her hands under Smith's shirt and bra, touching her breasts.

27.     K. Smith was arrested and detained as a result of the false and fraudulent charge filed against her by the Defendants.  K. Smith posted bond with respect to this charge a short time later, but was held until after midnight.  As a direct and proximate result of her arrest and the Defendants' failure and refusal to release her when she bonded out, K. Smith was fired from her job at Accent Marketing for violating the company's no call no show policy.  She was also denied unemployment compensation for violating Accent Marketing's no call no show policy because she was unable to call and report her absence due to her arrest.

28.     On September 5, 2008, Defendants, through Kemp, prepared a false and fraudulent Probable Cause Statement Form to justify the unlawful arrest of P. Smith and his continued detention, which is attached hereto and incorporated by reference herein as Exhibit 2. In this Probable Cause Statement, Kemp falsely stated that:

        a.      The Smith dogs were running loose and threatening the neighbors' children;

5

      b.     There were five (5) distinct bullet holes all facing inward in the window of K. Smith's home;

      c.     P. Smith acknowledged bullet holes in the window;

      d.     P. Smith had moved into the Jackson Street home;

      e.     As the police drove away, P. Smith yelled a spontaneous admission to neighbors, to wit: "That didn't do you any f---ing good. I fired those shots. I should have put the rounds through your f---ing house," and that, as a result, two unidentified "victims" were frightened and feared for the safety of their children.

29.     Additionally, on or about September 5, 2008, K. Smith was feeding her dogs at her residence at 678 Jackson Street. Because of the traumatic incidents at her home and in Farmington, she and her children had spent the previous night with her mother, and she had returned to the Jackson Street residence with her mother to feed the dogs.

30.     As K. Smith was feeding her dogs, she heard gunfire. She looked up and saw Stephen Maciak in his backyard holding a rifle. K. Smith told her mother to call 911 for assistance.

31.     Kemp and Niccum responded to the scene in a Department police car. Two additional persons unknown to K. Smith responded to the scene in a blue pickup truck. Even thought K. Smith was the person who had made the shots fired call, all of the responders approached K. Smith with handguns drawn in a threatening and menacing manner. However, when Kemp, Niccum, and the two other unknown responders saw that K. Smith was not alone, they left the scene, with Niccum attempting to hide in the passenger seat of the police car.

32.     Kemp, Niccum, and the other two unknown responders approaching K. Smith with weapons drawn caused her to be concerned for her physical safety and wellbeing.

33.     K. Smith requested that Kemp make a police report regarding the shots she heard fired and seeing Maciak with a rifle.  Kemp refused to make a report of the incident, stating that this was his town and things were going to go his way or words to that effect.

34.     Since September 5, 2008, Plaintiffs have learned that Niccum is a convicted felon, who is not permitted to possess a firearm, although Kemp allowed him to possess a firearm when he and Niccum approached K. Smith on September 5, 2008.  On or about February 26, 2009, Niccum was indicted for being a felon in possession of a firearm.  At the time of the search of Niccum's home leading to the felon in possession of a firearm charge against him, seven guns were seized, as well as a small amount of marijuana and drug paraphernalia.  On or about August 13, 2009, Niccum was sentenced to serve 21 months in the U.S. Bureau of Prisons.

35.     On March 17, 2009, a preliminary hearing was held on P. Smith's Unlawful Use of a Weapon charge.  All three witnesses testified that the statement Kemp reported  as an "admission" by P. Smith did not occur or was not heard by them.  No witness saw P. Smith with a gun.  The Associate Circuit Court of St. Francois County, Missouri found no probable cause existed to support the Unlawful Use of a Weapon Charge filed against P. Smith.  A copy of the Associate Circuit Court of St. Francois County's March 17, 2009 Judgment and Order Upon Preliminary Hearing is attached hereto and incorporated by reference herein as Exhibit 3.

36.     Additionally, the charges of committing peace disturbance by language made against P. Smith and K. Smith for the incident(s) that allegedly occurred on September 3, 2008 at 6:00 p.m. and the verbal assault charge against P. Smith were later nolle prossed.  See Exhibit 1.

37.     On November 26, 2008, K. Smith requested copies of police reports, court records, statements and any other documents pertaining to her and P. Smith from the Department pursuant to Section 610 R.S. Mo., the Missouri Sunshine Law.  The Iron Mountain Lake City

Clerk replied by letter, stating the City could not locate any records regarding the Smiths.  A copy of K. Smith's Sunshine Law request is attached hereto and incorporated by reference herein as Exhibit 4.  The City's response to K. Smith's Sunshine Law request is attached hereto and incorporated by reference hereto as Exhibit 5.

38.     Upon information and belief, the City and its police department and/or police officers have previously engaged in constitutional violations similar to those set forth herein to include but not necessarily be limited to the false arrest of citizens and residents of St. Francois County, showing a pattern and practice, custom and usage on the part of the Defendants to violate the constitutional rights of others under color of state law.

39.     Upon information and belief, the Defendants maintain a policy of insurance with respect to the state tort law claims filed against them, and therefore, to the extent that any of the Defendants may assert the defense of sovereign immunity with respect to state tort law claims, it has been waived under the provisions of §537.610 R.S.Mo. by maintaining such policy of insurance.

COUNT I
UNCONSTITUTIONAL ARREST AND SEARCH BY
DEFENDANTS COGNIZABLE UNDER 42 U.S.C. §1983

For Count I of K. Smith's cause of action against all Defendants, Plaintiff states:

40.     Plaintiff K. Smith incorporates by reference each and every allegation and averment set forth in paragraphs 1 through 39 of this Complaint as though fully set forth herein.

41.     Defendants falsely arrested and imprisoned K. Smith on September 4, 2008 without probable cause, justification, or lawful authority to do so when she appeared at the Farmington probation and parole office to take custody of her five year old daughter, Samantha, after the false arrest of her husband P. Smith.  K. Smith was arrested pursuant to the false and

fraudulent charge that she had committed peace disturbance by language on September 3, 2008 at 6:00 p.m. at her Jackson Street home even though she was not home at 6:00 p.m. on September 3, 2008. Additionally, K. Smith was detained for several hours after she posted her bond.

42.     At the time of her arrest and under Kemp's direction and control, Kemp's wife "searched" K. Smith by placing her hands under Smith's shirt and bra, touching her breasts.

43.     As a direct and proximate result of K. Smith's false arrest and continued detention after posting bond by the Defendants, she lost her job with Accent Marketing. K. Smith has sustained and continues to sustain lost wages and other benefits of her employment as a result of her false arrest.

44.     As a direct and proximate result of the unlawful and malicious arrest of K. Smith by Defendants, committed under color of law and under their authority as City officials, K. Smith was deprived of her right to be free from the unreasonable search and seizure of her person, as well as her liberty and due process rights, in violation of the Fourth and Fourteenth Amendments to the United States Constitution actionable pursuant to 42 U.S.C. § 1983.

45.     As a direct and proximate result of the acts complained of herein, K. Smith has suffered emotional injuries and damages. The unlawful actions of the Defendants caused her pain of the mind, including but not limited to mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

46.     The conduct of the Defendants and each of them jointly and separately was reckless and callously indifferent to the constitutional rights of Plaintiff, malicious and wanton with respect to those rights, and an award of punitive damages is warranted and necessary to

punish the Defendants in their individual capacities and to deter each of them, and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff K. Smith prays for a judgment against the Defendants seeking money damages against them for compensatory damages in an amount that is fair and reasonable for her lost wages and benefits of employment and emotional pain and suffering; for punitive damages against each Defendant in his individual capacity; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees, and for such other and further relief as the Court deems fair and appropriate under the circumstances.

COUNT II
UNCONSTITUTIONAL ARREST BY DEFENDANTS
COGNIZABLE UNDER 42 U.S.C. §1983

For Count II of P. Smith's cause of action against all Defendants, Plaintiff states:

47.     Plaintiff P. Smith incorporates by reference each and every allegation and averment set forth in paragraphs 1 through 46 of this Complaint as though fully set forth herein.

48.     Defendants falsely arrested and imprisoned P. Smith on September 4, 2008 without probable cause, justification, or lawful authority to do so.

49.     Thereafter, P. Smith's detention continued pursuant to the false and fraudulent Probable Cause Statement prepared by Kemp.

50.     As a direct and proximate result of P. Smith's false arrest by the Defendants, he lost job opportunities and has sustained and continues to sustain lost wages and other benefits of his employment.

51.     As a direct and proximate result of the acts complained of herein, P. Smith has suffered emotional injuries and damages.  The unlawful actions of the Defendants caused him pain of the mind, including but not limited to mental anguish, inconvenience, humiliation,

embarrassment, loss of enjoyment of life, stress, and loss of reputation.

52.    As a direct and proximate result of the unlawful and malicious arrest of P. Smith by Defendants, committed under color of law and under their authority as City officials, P. Smith was deprived of his right to be free from the unreasonable search and seizure of his person, as well as his liberty and due process rights, in violation of the Fourth and Fourteenth Amendments to the United States Constitution actionable pursuant to 42 U.S.C. § 1983.

53.    The conduct of Defendants and each of them jointly and separately was reckless and callously indifferent to the constitutional rights of Plaintiff, malicious and wanton with respect to those rights, and an award of punitive damages is warranted and necessary to punish the Defendants in their individual capacities and to deter each of them, and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff P. Smith prays for a judgment against the Defendants seeking money damages against them for compensatory damages in an amount that is fair and reasonable for his lost wages and other benefits of employment and emotional pain and suffering; for punitive damages against each Defendant in his individual capacity; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees, and for such other and further relief as the Court deems fair and appropriate under the circumstances.

COUNT III
PLAINTIFFS' 42 U.S.C. SECTION 1983 CLAIM
OF VIOLATION OF SUBSTANTIVE DUE PROCESS RIGHTS

As and for Count III of their Complaint against Defendants, Plaintiffs state as follows:

54.    Plaintiffs allege and incorporate by reference as if fully set forth herein paragraphs 1 through 53  above.

55.    Plaintiffs have a constitutionally protected liberty interest to be free from arbitrary

11

arrest, detention, and/or the search of their person, which rights are secured by the 4th, 5th, and 14th Amendments to the United States Constitution and implicit in the concept of ordered liberty.

56.     Plaintiffs were deprived of their constitutionally protected liberty interests by the acts of the Defendants as set forth herein, which conduct was so outrageous that it shocks the conscience, was arbitrary and capricious, offended judicial notions of fairness and was otherwise offensive to human dignity in that:

a.      K. Smith was arrested and deprived of her liberty without cause or justification based upon a false and fraudulently issued charge that she had disturbed the peace by language on September 3, 2008 at 6:00 p.m. at her home on Jackson Street, even though she was not even present at the time.

b.      K. Smith's person was searched by Kemp's wife at Kemp's direction and/or with his knowledge and/or consent, even though she was not a law enforcement officer and had no right, power or authority to search K. Smith.

c.      P. Smith was arrested and deprived of his liberty without cause or justification based upon the false and fraudulently issued charges that he had unlawfully used a weapon on September 3, 2008 at approximately 9:00 a.m., and that he had disturbed the peace by language and committed verbal assault on September 3, 2008 at 6:00 p.m. on Jackson Street, even though he was not at K. Smith's home at that time.

d.      K. Smith's physical wellbeing and safety were threatened and her emotional well being disturbed by the Defendants and other unknown persons, who entered her driveway with guns drawn on September 5, 2008.

e.      Kemp threatened to remove the Smith children from the Smith home in the children's presence, stating that their father was a "piece of s—t."  Samantha was

further traumatized by Kemp and his wife when they tried to force her into a car when she was removed from her father's custody pursuant to his false arrest.

57.     Plaintiffs' liberty interests were interfered with by Defendants' actions as set forth herein, which actions were patently arbitrary and capricious.

58.     As a direct and proximate result of the actions of the Defendants as set forth herein, Plaintiffs have suffered and will continue to suffer lost income and other benefits of employment.

59.     As a direct and proximate result of the acts complained of herein, Plaintiffs have suffered emotional injuries and damages.  The unlawful actions of the Defendants caused them pain of the mind, including but not limited to mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

60.     As a result, Plaintiffs' substantive due process rights secured by the Fourteenth Amendment to the United States Constitution were violated, actionable pursuant to 42 U.S.C. §1983.

61.     Defendants conduct as set forth herein was arbitrary and capricious, unjustified and intended to cause injury to and did cause Plaintiffs injury.

62.     The actions of the Defendants complained of herein were taken under color of state law.

63.     The conduct of the Defendants and each of them jointly and separately was reckless and callously indifferent to the Constitutional rights of Plaintiffs, malicious and wanton with respect to those rights, and an award of punitive damages is warranted and necessary to punish Defendants in their individual capacities, and to deter each of them and others from the same or similar transgressions in the future.

13

WHEREFORE, Plaintiffs pray for a judgment against the Defendants seeking compensatory damages in an amount that is fair and reasonable for their lost wages and benefits of employment and emotional pain and suffering; for punitive damages against each Defendant in his individual capacity; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances

COUNT IV

CIVIL CONSPIRACY CLAIM DIRECTED AGAINST DEFENDANTS KEMP
AND NICCUM COGNIZABLE UNDER 42 U.S.C. §1983

For Count IV of Plaintiffs' cause of action against Defendants Kemp and Niccum, Plaintiffs state:

64.     Plaintiffs incorporate by reference each and every allegation and averment contained in paragraphs 1 through 63 of their Complaint as though fully set forth herein.

65.     Defendants Kemp and Niccum reached an understanding to deprive the Smiths of their constitutional rights as set forth in Counts I through III above.

66.     Defendants acting under color of law, conspired together and amongst themselves and reached a mutual understanding to undertake a course of conduct that violated the Smiths' constitutional rights.  In furtherance of this conspiracy, these Defendants committed the following overt acts to include but not necessarily be limited to:

A.     Falsely arrested K. Smith;

B.     Falsely arrested P. Smith;

C.     Allowed the search of K. Smith's person by Kemp's wife even though she was not a law enforcement officer;

14

D.     Came to K. Smith's house and entered her driveway with guns drawn;

E.     Traumatized the Smith children by threatening to take them away from their family and telling them that their father was "a piece of s—t."

F.     Ignored the policies and procedures of the Police Department and/or the City by encouraging and/or permitting the type of conduct described above; and

G.     Failed to prepare police reports regarding these incidents so as to cover up the violations of the Smiths' constitutional rights.

67.     Defendants shared the general conspiratorial objective which was to abuse the Smiths by violating their constitutional rights as set forth herein, to include but not necessarily be limited to, falsely arresting them and to thereafter conspire to insulate themselves from sanction, civil, criminal or from the City  by failing and refusing to give factually accurate accountings of the events at issue herein.

68.     These Defendants furthered the conspiracy by participating in it from its inception or by participating in the cover-up and/or ignoring this course of conduct so as to insulate themselves and others from liability for the outrageous and unlawful acts of the Defendants as described herein.

69.     As a direct and proximate result of the actions of the Defendants as set forth herein, the Smiths suffered and continue to suffer lost wages and other benefits of employment.

70.     As a direct and proximate result of the acts complained of herein, Plaintiffs have suffered emotional injuries and damages.  The unlawful actions of the Defendants caused them pain of the mind, including but not limited to mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

71.     The acts of Defendants Kemp and Niccum as set forth herein were motivated by

15

an evil motive or intent and/or said actions involved a reckless or callous indifference to the constitutional rights of the Smiths, making an award of punitive damages appropriate in this case to deter each of them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiffs pray for a judgment against Defendants Kemp and Niccum for compensatory damages in an amount that is fair and reasonable for their lost wages and benefits of employment and emotional pain and suffering; for punitive damages against Defendants Kemp and Niccum in their individual capacities; for the costs of this action, to include but not necessarily be limited to their reasonable attorneys' fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

COUNT V
FAILURE TO INSTRUCT, TRAIN, SUPERVISE, CONTROL,
AND/OR DISCIPLINE AGAINST THE  CITY OF IRON MOUNTAIN LAKE
COGNIZABLE UNDER 42 U.S.C. §1983

For Count V of Plaintiffs' cause of action against the City of Iron Mountain Lake, Plaintiffs state as follows:

72.    Plaintiffs incorporate by reference each and every allegation and averment contained in paragraphs 1 through 71 of their Complaint as though fully set forth herein.

73.    Defendants Kemp and Niccum violated the constitutional rights of K. Smith and P. Smith as set forth in Counts I through IV above.

74.    There exists within the Police Department and/or the City policies or customs, practices and usages that are so pervasive that they constitute the policies of this Defendant, that caused the constitutional deprivations of the Smiths as set forth herein.  The policies, customs, practices, and usages that exist are:

A.    To arrest subjects without reasonable cause or provocation and in violation of their constitutional rights;

16

B.      To ignore the policies and procedures of Iron Mountain Lake and/or the

Police Department, by encouraging and/or permitting the false arrest of suspects;

C.      To engage in a course of conduct designed to cover-up and insulate

City officials from sanction, civil, criminal, and/or by the Department or City; and

D.      To fail to adequately train, supervise, and/or discipline police officers

and/or City officials concerning the practices aforedescribed to assure compliance with

City and/or Department policy, state and federal laws, and the Constitution of the United

States.

75.     Alternatively and without waiver of the foregoing, the City's training

program was not adequate to train its officers and officials to properly handle reoccurring

situations like the one involving the Smiths, and therefore, the City had a policy or custom of

failing to adequately train employees/officials of the City and/or Department.

76.     The City and/or the Department knew that more and/or different training was

needed to avoid the false arrests and other constitutional deprivations of the Plaintiffs, or the

need for such training was obvious to the City.

77.     The City is ultimately vested with the duty, power and authority to train,

supervise, discipline and otherwise control the officers of the Police Department/City.  The City

failed in its duty to so train, supervise and discipline Defendants Kemp and Niccum in general

and specifically so as to conform their conduct with constitutional requirements.  Specifically,

the City failed to adequately train, supervise and discipline officers of the Police

Department/agents of the City in the proper and lawful arrest of subjects; failed to train,

17

supervise and discipline officers with regard to the duty to intervene and/or report transgressions, and to truthfully respond to inquiries. The City effectively abrogated the power to train, supervise, discipline and control officers of the Police Department/agents of the City, resulting in the constitutional deprivations to the Smiths set forth above.

78.     The acts of the Defendants as set forth herein were taken under color of state law.

79.     As a direct and proximate result of the actions of this Defendant as set forth herein, the Smiths have suffered and continue to suffer lost wages and other benefits of employment.

80.     As a direct and proximate result of the acts complained of herein, Plaintiffs have suffered emotional injuries and damages. The unlawful actions of this Defendant caused them pain of the mind, including but not limited to mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

WHEREFORE, Plaintiffs pray for a judgment against Defendant the City of Iron Mountain Lake for compensatory damages in an amount that is fair and reasonable for their lost wages and benefits of employment and emotional pain and suffering; for the costs of this action, including but not necessarily limited to reasonable attorneys' fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

COUNT VI
PAUL SMITH'S CLAIM FOR FALSE ARREST
AGAINST DEFENDANTS

For Count VI of Plaintiff P. Smith's cause of action against Defendants, Plaintiff states as follows:

81.     Plaintiff incorporates by reference each and every allegation and averment set forth in paragraphs 1 through 80 inclusive of this Complaint as though fully set forth herein.

82.     The acts of the Defendants constituted the false arrest and/or imprisonment of P. Smith, who was confined and held against his will for an unreasonable length of time without just cause or excuse, and without provocation.

83.     As a direct and proximate result of the actions of the Defendants as set forth herein, P. Smith has suffered and will continue to suffer lost wages and other benefits of employment.

84.     As a direct and proximate result of the acts complained of herein, Plaintiff P. Smith  has suffered emotional injuries and damages.  The unlawful actions of the Defendants caused him pain of the mind, including but not limited to mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

85.     The conduct of the Defendants as aforedescribed was outrageous because of their evil motive(s) and/or their reckless indifference to the rights and well-being of Plaintiff and was wrongful without just cause or excuse, and therefore, Plaintiff is entitled to an award of punitive damages against Defendants Kemp and Niccum in their individual capacities.

WHEREFORE, Plaintiff P. Smith prays for a judgment against Defendants for compensatory damages in an amount that is fair and reasonable for his lost wages and benefits of employment and emotional pain and suffering; for punitive damages against Defendants Kemp and Niccum in their individual capacities; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

COUNT VII
KATHREN SMITH'S CLAIM FOR FALSE ARREST
AGAINST DEFENDANTS

For Count VII of Plaintiff K. Smith's cause of action against Defendants, Plaintiff states

as follows:

86.     Plaintiff incorporates by reference each and every allegation and averment set forth in paragraphs 1 through 85 inclusive of this Complaint as though fully set forth herein.

87.     The acts of the Defendants constituted the false arrest and/or imprisonment of K. Smith, who was confined and held against her will for an unreasonable length of time without just cause or excuse, and without provocation.

88.     As a direct and proximate result of the actions of the Defendants as set forth herein, K. Smith has suffered and will continue to suffer lost wages and other benefits of employment.

89.     As a direct and proximate result of the acts complained of herein, Plaintiff K. Smith  has suffered emotional injuries and damages.  The unlawful actions of the Defendants caused her pain of the mind, including but not limited to mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

90.     The conduct of the Defendants as aforedescribed was outrageous because of their evil motive(s) and/or their reckless indifference to the rights and well-being of Plaintiff and was wrongful without just cause or excuse, and therefore, Plaintiff is entitled to an award of punitive damages against Defendants Kemp and Niccum.

WHEREFORE, Plaintiff K. Smith prays for a judgment against Defendants for compensatory damages in an amount that is fair and reasonable for her lost wages and benefits of employment and emotional pain and suffering; for punitive damages against Defendants Kemp and Niccum in their individual capacities; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

20

COUNT VIII
KATHREN SMITH'S CLAIM FOR ASSAULT AND
BATTERY AGAINST ALL DEFENDANTS

For Count VIII of Plaintiff K. Smith's cause of action against Defendants, Plaintiff states as follows:

91.     Plaintiff incorporates by reference each and every allegation and averment set forth in paragraphs 1 through 90 inclusive of this Complaint as though fully set forth herein.

92.     Defendants, through Kemp's wife, had offensive contact with K. Smith's breasts on or about September 4, 2008, when she placed her hand under K. Smith's shirt and bra under the authority of Kemp.

93.     Defendants approached K. Smith with guns drawn and pointed at her with the intent to cause her apprehension of bodily harm.

94.     Defendants approaching K. Smith with guns drawn caused her to be in apprehension of bodily harm.

WHEREFORE, Plaintiff K. Smith prays for a judgment against Defendants for compensatory damages in an amount that is fair and reasonable for her emotional pain and suffering; for punitive damages against Defendants Kemp and Niccum in their individual capacities; the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

COUNT IX
PAUL SMITH'S CLAIM FOR MALICIOUS PROSECUTION
AGAINST DEFENDANTS

For Count IX of Plaintiff P. Smith's cause of action against Defendants, Plaintiff P. Smith  states:

21

95.     Plaintiff incorporates by reference each and every allegation and averment set forth in paragraphs 1 through 94 inclusive of this Complaint as though fully set forth herein.

96.     Defendants initiated, instigated and/or commenced criminal prosecutions against P. Smith through the issuance of two summonses against him (committing peace disturbance by language and verbal assault) and the swearing out of the false probable cause statement against him for unlawful use of a weapon, which prosecution was styled State v. Smith, Cause No. 08D7-CR01621.

97.     The charges set forth in paragraph 96 above all terminated in favor of P. Smith. After his preliminary hearing, the Unlawful Use of a Weapon charge was dismissed pursuant to a finding of no probable cause and the peace disturbance  and verbal assault charges were nolle prossed.  These charges are hereinafter referred to as the "dismissed charges."

98.     Defendants acted maliciously in filing the above-referenced dismissed charges against P. Smith in that they intentionally and wrongfully filed the dismissed charges, knowing that they were not supported by law or fact.

99.     The dismissed charges were filed by Defendants without just cause or excuse.

100.     There was no probable cause for the initiation of the above-referenced dismissed charges against P. Smith and such causes of action were initiated without reasonable grounds, in that an ordinarily careful person having made reasonable inquiry would not have believed that any crimes under the laws of the State of Missouri or City of Iron Mountain Lake had been committed.

101.     Defendants initiated the criminal proceedings against P. Smith primarily for a purpose other than to bring him as an offender to justice.  As set forth in paragraph 28 above, the Unlawful Use of a Weapon charge and the other charges filed against P. Smith were based upon

false testimony/sworn statements.  The falsity of these statements was discoverable upon reasonable investigation, particularly as to the summonses, because P. Smith was not present at the Jackson Street address on September 3, 2008 at 6:00 p.m.

102.    P. Smith has been damaged as a result of the wrongful and malicious initiating of the dismissed charges, including but not limited to incurring attorney's fees in defending against these frivolous and vexatious charges.

103.    As a direct and proximate result of the actions of the Defendants as set forth herein, P. Smith has suffered and will continue to suffer lost wages and other benefits of employment and pain of the mind, including but not limited to mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

104.    Defendants conduct as set forth herein was outrageous because of their evil motive and reckless indifference to the rights of P. Smith, entitling him to an award of punitive damages.

WHEREFORE, Plaintiff P. Smith prays for a judgment against Defendants for compensatory damages in an amount that is fair and reasonable for her emotional pain and suffering; for punitive damages against Defendants Kemp and Niccum in their individual capacities; the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT X
## <u>KATHREN SMITH'S CLAIM FOR MALICIOUS PROSECUTION</u>
## <u>AGAINST DEFENDANTS</u>

For Count X of Plaintiff K. Smith's cause of action against all Defendants, Plaintiff states:

105.    Plaintiff incorporates by reference each and every allegation and averment set forth in paragraphs 1 through 104 inclusive of this Complaint as though fully set forth herein.

106.    Defendants initiated, instigated and/or commenced a criminal prosecution against K. Smith through the issuance of a summons against her (committing peace disturbance by language).

107.    The charge set forth in paragraph 106 above was terminated in favor of K. Smith when it was nolle prossed.  This charge is hereinafter referred to as the "dismissed charge."

108.    Defendants acted maliciously in filing the above-referenced dismissed charge against K. Smith in that they intentionally and wrongfully filed the dismissed charge, knowing that it was not supported by law or fact.

109.    The dismissed charge was filed by Defendants without just cause or excuse.

110.    There was no probable cause for the initiation of the above-referenced dismissed charge against K. Smith and such cause of action was initiated without reasonable grounds, in that an ordinarily careful person having made reasonable inquiry would not have believed that any crime under the laws of the City of Iron Mountain Lake had been committed.

111.    Defendants initiated the criminal proceedings against  K. Smith primarily for a purpose other than to bring her as an offender to justice.  This charge was based upon false testimony because K. Smith was not even home at the time of the act alleged and the falsity of such charge was discoverable upon reasonable investigation.

112.    K. Smith has been damaged as a result of the wrongful and malicious initiating of the dismissed charge.   As a direct and proximate result of the actions of the Defendants as set forth herein, K. Smith has suffered and will continue to suffer lost wages and other benefits of employment and pain of the mind, including but not limited to mental anguish, inconvenience,

24

humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

113.    Defendants conduct as set forth herein was outrageous because of their evil motive and reckless indifference to the rights of K. Smith, entitling her to an award of punitive damages.

WHEREFORE, Plaintiff K. Smith prays for a judgment against Defendants for compensatory damages in an amount that is fair and reasonable for her emotional pain and suffering; for punitive damages against Defendants Kemp and Niccum in their individual capacities; the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

Respectfully submitted,

PLEBAN & PETRUSKA LAW, LLC

By:      /s/ Lynette M. Petruska
         C. John Pleban # 4066
         Lynette M. Petruska # 15580
         2010 South Big Bend Blvd.
         St. Louis, MO  63117
         Telephone:    (314) 645-6666
         Facsimile:    (314) 645-7376

         Attorneys for Plaintiffs